**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELLIOT STEED<br>42 East Shawnee Avenue<br>Plymouth Meeting, PA 18651<br>　　　　Plaintiff,<br>　　v.<br><br>GEISINGER HEALTH d/b/a<br>GEISINGER HEALTH SYSTEM<br>100 North Academy Avenue<br>Danville, PA 17821<br>　　and<br>GEISINGER WYOMING VALLEY<br>MEDICAL CENTER<br>1000 East Mountain Blvd.<br>Wilkes-Barre, PA 18702<br><br>　　　　Defendants. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Elliott Steed (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Geisinger Health d/b/a Geisinger Health System and Geisinger Wyoming Valley Medical Center (hereinafter collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA"),[1] and Pennsylvania common law. Plaintiff was unlawfully terminated by Defendants, and he suffered damages more fully described/sought herein.

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Geisinger Health d/b/a Geisinger Health System is a regional health care provider to central, south-central and northeastern Pennsylvania, headquartered at the above-captioned address.

9. Geisinger Wyoming Valley Medical Center is a nonprofit corporation operating an acute-care, community-based hospital in Wilkes-Barre, PA, and an ambulatory campus located in south Wilkes-Barre, PA, with an address as set forth in the above caption. Plaintiff was hired through and worked out of this address.

10. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was employed by Defendants for approximately 3.5 months, from in or about April 19, 2021, until his unlawful termination (discussed further *infra*) on or about July 31, 2022.

14. Plaintiff worked for Defendants as an Environmental Services Technician under the supervision of Jennifer Marcano (*hereinafter* "Marcano").

15. Throughout his employment with Defendants, Plaintiff was a hard-working employee who performed his job well.

16. On or about July 3, 2022, Plaintiff suffered serious work-related injuries to his back, when he slipped and fell loading linen carts onto a tractor trailer, which have resulted in long-term and permanent back problems (including dislocated discs and other complications) for which he continues to undergo treatment and therapy.

17. Following his aforesaid work-related injuries, Plaintiff immediately advised the Lead on duty, Brenda (last name unknown, hereinafter "Brenda") of the nature of his injuries and pain to his back.  Brenda advised Plaintiff that she was unable to access the injury reports on the computer and that Plaintiff would have to notify his supervisor of his work-related injuries, when he returned to work from the July 4 holiday weekend.

18. Plaintiff returned to work on or about July 5, 2021, following the July 4 holiday, and informed Mercano that he suffered a work-related injury on or about July 3, 2021, for which he was in acute pain and required treatment.  However, instead of filing an incident report for worker's compensation benefits, Mercano provided Plaintiff with some pain medication and "Icy Hot" and advised him to work through it.

19. Plaintiff attempted to continue to work for the next few days for Defendants; however, as a result of his aforesaid work-related injuries/serious health conditions, Plaintiff was limited in his ability (at times) to perform some daily life activities, including but not limited to pushing heaving carts, walking, and working (among other daily life activities).

20. Despite his aforementioned work-related injuries/serious health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendants;

however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

21. For example, Plaintiff's aforesaid work-related injuries/serious health conditions continued to worsen prompting Plaintiff to visit one of Defendants' ER locations on or about July 8, 2021, wherein he was evaluated, provided with back injections and steroids, and released to return to work the following day.

22. Plaintiff returned to work on or about July 9, 2021, and continued to perform the laborious work of lifting and moving laundry courts, among other heavy, physical tasks for several days; however, his aforesaid work-related injuries continued to worsen, causing his legs to lock up and requiring additional evaluation/treatment and time of from work on or about July 18, 2021.

23. Plaintiff returned to work on or about July 19, 2021, and continued to perform his job duties well for the next two weeks, during which he required the reasonable accommodation of a few intermittent days off for diagnostic tests, evaluation, and treatment of his worsening work-related injuries/serious health conditions.

24. Plaintiff was then abruptly terminated from his employment with Defendants on or about July 31, 2021, for "attendance."

25. For purposes of termination, Plaintiff was documented as missing part or all of 5 separate days in July of 2021 (on his termination form), despite providing several text messages explaining to management he was unable to work on such days for medical reasons, as well as medical notes for most days excusing Plaintiff from work.

26. In fact, Plaintiff provided Defendants' management with a letter from his doctor requesting he remain out of work from Friday, July 28, 2021, through Sunday, July 30, 2021, for his aforesaid work-related injuries/serious health conditions.

27. Nonetheless, instead of accommodating Plaintiff's serious health conditions by allowing him to miss sporadic days for medical appointments, treatment, or incapacity, which Defendants could easily have done, Defendants refused any interactive process and merely terminated Plaintiff despite knowing that all of his July 2021 absences were due to his disabilities.[2]

28. Plaintiff believes and therefore avers that he was terminated because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and (4) Defendants' failure to properly accommodate him (discussed *supra*).

**Count I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**(1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate;**
**[3] Retaliation; and [4] Wrongful Termination)**
**-Against Both Defendants-**

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

31. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants, however, Plaintiff did require reasonable medical accommodations at times.

32. Plaintiff kept Defendants informed of his serious medical conditions and need for medical treatment and other accommodations.

---

[2] While Plaintiff was given a "written warning" for needing to miss 4 days between May/June of 2021, the majority of such days were for previously scheduled court-related custody matters that Plaintiff had put Defendants on notice of at the onset of his employment and for which he utilized authorized personal time. Plaintiff was then given a performance evaluation on or about June 22, 2021, identifying his performance was "satisfactory" in all areas (although noting his warning for attendance).

33. Plaintiff requested reasonable accommodations from Defendants, including but not limited to intermittent time off work for medical appointments, diagnostic testing, treatment, and to care for and treat his disabilities.

34. Plaintiff was terminated, on or about July 31, 2021, in close temporal proximity to requesting/utilizing accommodations for his own health conditions.

35. Plaintiff believes and therefore avers that he was terminated because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and (4) Defendants' failure to properly accommodate Plaintiff, by failing to engage in the interactive process by terminating Plaintiff after requesting/utilizing reasonable medical accommodations.

36. Defendants' actions as aforesaid constitute violations of the ADA.

## COUNT II
## Common-Law Wrongful Discharge
### (Public Policy Violation)
### -Against Both Defendants-

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

39. It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

40. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

                Respectfully submitted,

                **KARPF, KARPF & CERUTTI, P.C.**

By: _____

                Ari R. Karpf, Esq.
                3331 Street Road
                Two Greenwood Square, Suite 128
                Bensalem, PA 19020
                (215) 639-0801
                *Attorneys for Plaintiff*

Dated:   November 7, 2022